# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

CRYSTAL L. WASHINGTON,

                Defendant.

Case No. 23-CR-35-1-JPS

**ORDER**

## 1.    INTRODUCTION & BACKGROUND

In February 2023, a grand jury returned an Indictment charging Defendant Crystal L. Washington ("Defendant") with four counts—in Counts One through Three, of knowingly making false and fictitious written statements in connection with the purchase of firearms, and in Count Four, of knowingly transferring firearms to a felon (her co-defendant, Prince C. Houston ("Houston")). ECF No. 1; ECF No. 41 at 1. Specifically with respect to Counts One through Three, the Indictment charges her with representing on an ATF Form "that she was not an unlawful user of a controlled substance" when in fact she was. ECF No. 1 at 1, 2, 3; ECF No. 45 at 3 ("[Defendant] admitted that she lied on the form.").

Defendant moves to dismiss all four counts against her on the grounds that the Indictment "violates [her] Fifth and Sixth Amendment rights and fails to sufficiently state an offense" with respect to Counts One through Three and that Count Four "violate[s] the Second Amendment, particularly under . . . *New York State Rifle & Pistol Ass*[*ociation*] *v. Bruen*, 142 S. Ct. 2111 (2022) [(hereinafter, "*Bruen*")]." ECF No. 27 at 2. Magistrate Judge Nancy Joseph filed a report and recommendation recommending

that Defendant's motion to dismiss be denied in its entirety. ECF No. 41. Defendant objected to the report and recommendation, the United States responded to the objection, and Defendant replied. ECF Nos. 44, 45, 48. For the reasons discussed herein, the Court will overrule Defendant's objections, adopt the report and recommendation, and deny Defendant's motion to dismiss.

2.    **STANDARD OF REVIEW**

When reviewing a magistrate's recommendation, this Court is obliged to analyze de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id*. The Court's review encompasses both the magistrate's legal analysis and factual findings. *Id*.; *see also* Fed. R. Crim. P. 59(b).

3.    **ANALYSIS**

   3.1   **Sufficiency of Indictment with Respect to Counts One through Three**

      3.1.1   **Magistrate Judge Joseph's Report and Recommendation and the Parties' Arguments**

Defendant first argues that the Indictment is "legally insufficient to charge [her] with making false statements in connection with her purchase of firearms" in violation of 18 U.S.C. §§ 922(a)(6). ECF No. 27 at 2.[1] Specifically, Defendant argues that the Indictment is deficient in that it "does not make it clear that the 'knowingly' standard under §§ 924(a)(2)

---

[1] After Defendant filed her motion to dismiss, Chief Judge Pamela Pepper faced, and rejected, an identical challenge to the sufficiency of the indictment in *United States v. Larkin*, No. 23-CR-33-PP, 2023 U.S. Dist. LEXIS 192220 (E.D. Wis. Oct. 26, 2023).

and 922(a)(6) reaches beyond the false statement." *Id.* at 8. In other words, she claims that the Indictment impermissibly omits a scienter element. *Id.* at 3. "Because the [G]overnment has failed to allege scienter as to all the necessary elements of § 922(a)(6)," Defendant argues that "this Court should find the [I]ndictment legally insufficient as to Counts One through Three and should dismiss those charges." ECF No. 44 at 9–10.

> Title 18 U.S.C. § 922(a)(6) provides in relevant part that
>
> it shall be unlawful . . . for any person in connection with the acquisition . . . of any firearm . . . from a . . . licensed dealer . . . *knowingly* to make any false or fictitious oral or written statement . . . intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale . . . of such firearm . . . .

(emphasis added). Each of Counts One through Three charges Defendant "in connection with the acquisition of a firearm from Fleet Farm" with having "knowingly made a false and fictitious written statement intended and likely to deceive Fleet Farm, as to a fact material to the lawfulness of the sale . . . of such firearm . . . ." ECF No. 1 at 1, 2, 3. The Indictment goes on to state for each of Counts One through Three that "[i]n connection with the purchase of [the firearm], [Defendant] falsely stated on the Firearms Transaction Record (ATF Form 4473) that she was not an unlawful user of a controlled substance, when in fact, she was an unlawful user of a controlled substance." *Id.*

Defendant argues that the Indictment is deficient with respect to these counts because it "omits any allegation that [she] knew not just that her statement [that she was not an unlawful user of a controlled substance] was false, but that also it was material to the sale" and that it "was likely to deceive the firearm dealer." ECF No. 27 at 3; ECF No. 44 at 2. Relying on

Case 2:23-cr-00035-JPS   Filed 02/22/24   Page 3 of 29   Document 49

*Rehaif v. United States*, 588 U.S. ___, 139 S. Ct. 2191 (2019), Defendant argues that § 922(a)(6)'s scienter requirement—"knowingly"—"extend[s] to all the 'material elements' of the offense." ECF No. 27 at 4 (quoting *Rehaif*, 139 S. Ct. at 2197).

Magistrate Judge Joseph disagreed. She began by noting that the statute at issue in *Rehaif*—18 U.S.C. § 922(g)—includes no mens rea requirement at all, in contrast to § 922(a)(6). ECF No. 41 at 6. "Thus, the *Rehaif* Court was beginning with a different statutory analysis—whether to read the 'knowingly' found in the penalty provision of [18 U.S.C.] § 924(a)(2) into the text of § 922(g) where it is absent"[2]—a "textual difference" from the instant case which "[Defendant] fail[ed] to address." *Id.*[3]

"Furthermore," Magistrate Judge Joseph wrote, there is "no reasonable basis to extend [the scienter requirement] as [Defendant] does." *Id.* at 7. This is so because

> [t]he ordinary reading of 'knowingly' in the long statutory phrase is that it is modifying: (1) to make a false or fictitious

___

[2]"18 U.S.C. § 922(g) . . . provides that '[i]t shall be unlawful' for certain individuals to possess firearms . . . . A separate provision, [18 U.S.C.] § 924(a)(2), adds that anyone who '*knowingly* violates' the first provision shall be fined or imprisoned . . . ." *Rehaif*, 139 S. Ct. at 2194.

[3]Magistrate Judge Joseph does not, however, explain why this distinction makes a difference, let alone one supporting her conclusion. If anything, this distinction favors Defendant's emphasis of the presumption of scienter; the Supreme Court in *Rehaif* applied a "knowing" requirement into § 922(g) where none appeared in that provision. What Defendant here suggests seems even less a stretch in comparison. *See* ECF No. 44 at 9 ("[T]hat distinction actually *supports* rather than undermines [Defendant's] claim . . . . [T]he presumption [in favor of scienter] 'applies with equal *or greater force* when Congress includes a general scienter provision in the statute itself.'") (quoting *Rehaif*, 139 S. Ct. at 2195). Accordingly, the Court does not adopt this portion of Magistrate Judge Joseph's reasoning.

oral or written statement; (2) to furnish any false, fictitious, or misrepresented identification; and (3) to exhibit any false, fictitious, or misrepresented identification.

*Id.* Meanwhile, Magistrate Judge Joseph wrote, the "'intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale' phrase [of the statute]" merely "modifies 'statement' and 'identification.'" *Id.* (quoting § 922(a)(6)).

Further support for this conclusion, she wrote, can be seen in "the Seventh Circuit's pattern jury instruction for § 922(a)(6)." *Id.* That instruction does not extend the scienter element to that portion of § 922(a)(6) which requires that the statement was "intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale":

1. The defendant [made a false statement; furnished or exhibited false or misrepresented identification] in connection with the [acquisition; attempted acquisition] of [a firearm; ammunition]; from a licensed firearms [dealer; importer; manufacturer; collector]; and

2. The defendant did so knowingly; and

3. The [statement; identification] was intended to or likely to deceive the [dealer; importer; manufacturer; collector] with respect to any fact material to the lawfulness of the sale or other disposition of the [firearm; ammunition].

Seventh Circuit Pattern Criminal Jury Instruction, Statutory Instructions, 18 U.S.C. § 922(a)(6).

In objection to these conclusions, Defendant emphasizes that the Supreme Court in *Rehaif* stated that as "a matter of ordinary English grammar, we normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime." ECF No. 44 at 4 (quoting

*Rehaif*, 139 S. Ct. at 2196). Defendant also emphasizes "[t]he strong presumption of scienter" and argues that "[t]he magistrate judge's recommendation does not faithfully apply that presumption." *Id.* at 6–7. Lastly, Defendant compares the circumstance here at issue with that presented in *Flores-Figueroa v. United States*, 556 U.S. 646 (2009). *Id.* at 4.

### 3.1.2   Law and Analysis

An indictment must "state[] all the elements of the crime charged." *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013) (citing *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)). "[A]n indictment is defective if it fails to allege elements of scienter that are *expressly contained* in the statute that describes the offense." *United States v. Gutierrez*, 978 F.2d 1463, 1467 (7th Cir. 1992) (quoting *United States v. Pupo*, 841 F.2d 1235, 1239 (4th Cir. 1988)); *see also United States v. Dixon*, 596 F.2d 178, 180 (7th Cir. 1979) ("The general rule is that an indictment is defective which fails to allege knowledge as an element when such element is explicitly contained in the statute.") (citing 1 WRIGHT, FEDERAL PROCEDURE § 215 at 243 n.20 and *United States v. Wabaunsee*, 528 F.2d 1, 3–4 (7th Cir. 1975)).

"A court considering a motion to dismiss does not ask whether the indictment could have been framed 'in a more satisfactory manner' but whether the indictment 'conforms to minimal constitutional standards.'" *United States v. Ganos*, No. 18-CR-62-PP, 2019 U.S. Dist. LEXIS 84386, at *19 (E.D. Wis. May 20, 2019) (quoting *Vaughn*, 722 F.3d at 925). Further, "[i]ndictments are reviewed on a practical basis and in their entirety, rather than 'in a hypertechnical manner.'" *Smith*, 230 F.3d at 305 (quoting *United States v. McNeese*, 901 F.2d 585, 602 (7th Cir. 1990)).

An indictment satisfies [the Fifth and Sixth Amendments'] minimum requirements "if it (1) contains the elements of the

> offense charged; (2) sufficiently apprises the accused of what
> he must be prepared to meet; and (3) enables the accused to
> plead a judgment under the indictment as a bar to any
> subsequent prosecution for the same offense."

*United States v. Scheuneman*, 712 F.3d 372, 378 (7th Cir. 2013) (quoting *United States v. McComb*, 744 F.2d 555, 562 (7th Cir. 1984)). "In setting forth the offense, it is generally acceptable for the indictment to 'track' the words of the statute itself, so long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished." *Smith*, 230 F.3d at 305 (quoting *United States v. Hinkle*, 637 F.2d 1154, 1157 (7th Cir. 1981)). "However, an indictment that tracks the statutory language can nonetheless be considered deficient if it does not provide enough factual particulars to 'sufficiently apprise the defendant of what he must be prepared to meet.'" *Id.* (quoting *Russell v. United States*, 396 U.S. 749, 763 (1962)).

"As 'a matter of ordinary English grammar,' we normally read the statutory term '"knowingly" as applying to all the subsequently listed elements of the crime.'" *Rehaif*, 139 S. Ct. at 2196 (quoting *Flores-Figueroa*, 556 U.S. at 650, 652); *id.* ("[B]y specifying that a defendant may be convicted only if he 'knowingly violates' § 922(g), Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)."). There is a "longstanding presumption . . . that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements . . . .'" *Id.* (quoting *United States v. X-Citement Video Inc.*, 513 U.S. 64, 72 (1994) and *Morissette v. United States*, 342 U.S. 246, 256–58 (1952)). "But the all-subsequent-elements presumption is not a bright-line rule; it 'can be rebutted where the "context" or

"background circumstances" of a statute lead to a different reading.'" *United States v. Moreira-Bravo*, 56 F.4th 568, 572 (8th Cir. 2022) (quoting *United States v. Bruguier*, 735 F.3d 754, 761 (8th Cir. 2013), in turn quoting *Flores-Figueroa*, 556 U.S. at 652)). "Whether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent." *United States v. Howard*, No. 21-CR-28, 2021 U.S. Dist. LEXIS 164885, at *9–10 (E.D. Wis. June 3, 2021) (quoting *Rehaif*, 139 S. Ct. at 2195).

The question may therefore be understood as whether Defendant's knowing that the false statement she made had a "natural tendency to influence, or be capable of influencing, the decision of the decisionmak[er] to which it was addressed," *United States v. Holden*, 70 F.4th 1015, 1017 (7th Cir. 2023) (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995))—that it would "affect[] the dealer's willingness to sell h[er] a gun," *id.*—is itself an element of the offense such that it must be set forth in the Indictment. For the reasons discussed herein, the Court concludes that it is not, and that the Indictment satisfies minimum constitutional requirements in stating the essential elements of the offense.

Defendant relies heavily on *Flores-Figueroa*, but the Court does not agree that that case compels the conclusion that Defendant proffers. In *Flores-Figueroa*, the Supreme Court held that 18 U.S.C. § 1028A(a)(1) (which prohibits the "knowing[] transfer[], possess[ion], or use[], without lawful authority, [of] a means of identification of another person") requires the Government to show that the defendant knew that the means of identification she unlawfully transferred, possessed, or used, "in fact, belonged to 'another person.'" 556 U.S. at 647. "In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an

adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence." *Id.* at 650. The Supreme Court rejected the Government's argument that the word "knowingly" typically modifies "only a transitive verb without the full object, *i.e.*, that it leaves the hearer gravely uncertain about the subject's state of mind with respect to the full object of the transitive verb in the sentence." *Id.* at 651–52.

Defendant's argument to extend the scienter element in this situation goes beyond that sanctioned by the Supreme Court in *Flores-Figueroa*. Defendant argues that the word "knowingly" in § 922(a)(6) should extend not only beyond the verb "mak[ing]" and the object "any false or fictitious . . . statement," but also to the later dependent clause "with respect to any fact material to the lawfulness of the sale." That which was mandated by the Court in *Flores-Figueroa* is already understood to be true here—that the defendant must know that the statement she makes is false or fictitious (i.e., that the scienter extends from the verb to the direct object—the statement— and its falsity). *Flores-Figueroa* does not provide that "knowingly" must necessarily extend even further, for example, to a later dependent clause. The *Flores-Figueroa* court rejected the argument that "knowingly" modifies only the verb without modifying the direct object of the verb, but it did not address a situation in which a defendant sought to extend "knowingly" even beyond that point. *See United States v. Phea,* 755 F.3d 255, 265 (5th Cir. 2014) ("The Supreme Court's decision in *Flores-Figueroa* does not speak directly to whether an adverb (such as knowingly) that modifies a transitive verb also extends to adverbial phrases that also modify the transitive verb.").

A discussion of the Ninth Circuit's decision in *United States v. Price* is illustrative of the distinction the Court here wishes to emphasize. 980 F.3d 1211 (9th Cir. 2020). At issue in *Price* was a statute criminalizing the "knowing[] engage[ment] in sexual contact with another person without that other person's permission." *Id.* at 1217 (quoting 18 U.S.C. § 2244(b)). The issue at hand was "whether the term 'knowingly' . . . applies to the phrase 'without that other person's permission.'" *Id.* at 1217–1218 (quoting § 2244(b)). The court concluded that the statute's "most natural grammatical meaning is that the government must prove that the defendant knew he engaged in sexual contact, not that it prove that the defendant subjectively knew he lacked consent." *Id.* at 1218. "The term 'knowingly' modifies only the verb phrase 'engages in sexual contact with another person' and does not modify the adverbial prepositional phrase 'without that other person's permission.'" *Id.*

In so concluding, the court noted that "the phrase 'without that person's permission' describes the nature or extent of the prohibited action 'engag[ing] in sexual contact' but, grammatically, it does not tie to the term 'knowingly.'" *Id.* at 1219 (quoting 18 U.S.C. § 2244(b)). The court distinguished the circumstances in *Prince* from those in *Flores-Figueroa*: "Th[e] grammatical structure [in *Flores-Figueroa*]," — "where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object" — did not appear in *Price*, which instead involved "an adverbial prepositional phrase." *Id.* at 1220 (quoting 556 U.S. at 650) ("This grammatical structure does not appear in § 2244(b), where the phrase in question — 'without that other person's

permission'—is not the object of the sentence but an adverbial prepositional phrase.").

The Supreme Court's decision in *Rehaif* did not alter the Ninth's Circuit's conclusion. Notably, the Supreme Court wrote that *Rehaif* was "not a case where the modifier 'knowingly' introduces a long statutory phrase, such that questions may reasonably arise about how far into the statute the modifier extends." 139 S. Ct. at 2196 (citing *Flores-Figueroa*, 556 U.S. at 659 (Alito, J., concurring in part)). In contrast, "[s]ection 2244(b) raises those questions," the Ninth Circuit wrote in *Price*, "because while 'knowingly' modifies the verb 'engages in' and the object, 'sexual contact,' the sentence contains additional prepositional phrases including 'without that other person's permission." 980 F.3d at 1221. A similar distinction can be drawn between the statute at issue in this case and that in *Rehaif*. Section 922(a)(6) does not merely stop after a verb and an object. As in *Price*, it contains an additional dependent clause and so implicates "questions . . . about how far into the statute the modifier extends," which questions were not at issue in *Rehaif*. 139 S. Ct. at 2196.

Defendant asserts that "the same principles of statutory interpretation that underlie *Rehaif* demand a similar result when applied here," ECF No. 34 at 2, but the Court disagrees. In applying the presumption of scienter in *Rehaif* to § 922(g) (which prohibits possession of firearms by certain prohibited persons), the Supreme Court relied on, inter alia, the fact that "[i]n the provisions at issue here, the defendant's status is the 'crucial element' separating innocent from wrongful conduct." 139 S. Ct. at 2197 (citing *X-Citement Video*, 513 U.S. at 73). The Court distinguished such a circumstance from those in which the conduct prohibited "would be wrongful irrespective of the defendant's status." *Id.* Put otherwise, the

Court acknowledged that mere possession of a firearm is not itself wrongful. It is, instead, one's status as a prohibited person that makes the possession of the firearm wrongful, and so the scienter requirement must extend to that "crucial element" in order to separate innocent from wrongful conduct. *Id.* "A defendant who does not know that he [has that status as a prohibited person] does not have the guilty state of mind that the statute's language and purposes require." *Id.* at 2198.

It is not at all clear that this logic extends to the circumstance here at issue. The Court cannot conclude that the materiality of the false statement is necessarily the "crucial element" separating innocent from wrongful conduct. Irrespective of the materiality of the false statement, the defendant is still charged with having knowingly made a statement, which she knows to be false or fictitious, intended or likely to deceive a firearms dealer in a transaction for acquisition of a firearm. The Court cannot say that her knowledge of the materiality of the false statement is what makes her conduct wrongful where otherwise it would not be, and "[t]he presumption in favor of scienter requires a court to read into a statute only that mens rea which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Carter v. United States*, 530 U.S. 255, 269 (2000) (quoting *X-Citement*, 513 U.S. at 72). For example, "[a] defendant who knowingly takes, without permission, confidential property that belongs to someone else, knowing that her act will injure the owner or benefit a foreign government, cannot reasonably claim that she acted innocently," even if she does not know that the confidential property is "in fact a trade secret." *United States v. Xiaorong You*, 74 F.4th 378, 395 (6th Cir. 2023); *see also Price,* 980 F.3d at 1221 ("The normal default between two people for such intimate sexual activity, without any communication or prior understanding, is *not to touch.*

The person who does so anyway is not engaged in 'entirely innocent' conduct.") (citing *X-Citement*, 513 U.S. at 72).

The same is true with respect to someone who knowingly makes a statement which she knows to be false on a form for a firearm purchase, which statement she intends or should objectively suspect is likely to deceive the seller. ECF No. 41 at 10 ("[K]nowingly lying on A[TF] Form 4473 is not per se innocent conduct."); *Holden*, 70 F.4th at 1016 ("A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood." (citing *Bryson v. United States*, 396 U.S. 64, 72 (1969)); *see also Price*, 980 F.3d at 1219 ("[Section 2244(b)] already provides for a mens rea requirement that the defendant engage in sexual conduct knowingly, rendering unnecessary a second mens rea requirement" to safeguard against "sweep[ing] up innocent actors not intended to be covered by the statute") (citing *United States v. Ching Tang Lo*, 447 F.3d 1212, 1230 (9th Cir. 2006) and *X-Citement*, 513 U.S. at 69). Indeed, § 922(a)(6) already requires that the defendant make a false statement knowingly and that she intend for that false statement to deceive the firearms dealer; the statute's inclusion of multiple scienter requirements "render[s] unnecessary" an extension of "knowingly" to prevent truly innocent actors from falling within the statute's scope.

Both Seventh Circuit and out-of-circuit caselaw involving § 922(a)(6) supports the understanding that a defendant need not have known that her false statement was material to the transaction. This, too, is relevant to the analysis because the way courts interpret and instruct juries on statutory offenses goes hand in hand with determining, as a matter of statutory interpretation, what elements are involved in an offense (and, in turn, what information must be included in an indictment). *See Price*, 980 F.3d at 1222

(beginning analysis with "the statutory text," and then discussing the fact that the court has "not read [the statute] to tie the word 'knowingly' to the second element. Courts have instead read the second element as subject to objective proof.") (citations omitted). In *United States v. Bowling*, for example, the Seventh Circuit interpreted the statute's scienter requirement as requiring only that the defendant "knew that his statement was false." 770 F.3d 1168, 1174 (7th Cir. 2014) (citing *Bryan v. United States*, 524 U.S. 184, 193 (1998)). Other circuits have similarly declined to read *Rehaif* as necessarily upsetting their "long standing mens rea rule for conviction under [§ 922(a)(6)]." *United States v. Kaspereit*, 994 F.3d 1202, 1207 (10th Cir. 2021) (notwithstanding *Rehaif*, "[i]n terms of mens rea, . . . a conviction under § 922(a)(6) only requires knowledge that the statement is false"); *accord United States v. Diaz*, 989 F.3d 390, 393 (5th Cir. 2021) (notwithstanding *Rehaif*, rejecting the defendant's argument that "to convict for conspiracy to violate § 922(a)(6), the government must prove not only that she knowingly made a false statement but also that she made such statement to a seller she knew to be a licensed dealer"); *see also* ECF No. 45 at 6–7 (collecting cases).

The Court also finds it helpful to analyze treatment of other statutory offenses similarly requiring the knowing making of a false statement that would be material in the context in which it is made. Doing so supports the Court's conclusion that, notwithstanding the inclusion of "knowing" earlier in the statutory text, such offenses do not necessarily require that the defendant knew of the materiality of the statement, and the defendant's knowledge of the materiality of the statement need not, therefore, be alleged in the charging document. For example, 18 U.S.C. § 1001(a)(3) provides that "whoever, in any matter within the jurisdiction of the

executive, legislative, or judicial branch of the Government . . . , knowingly and willfully . . . makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry," faces criminal liability. But the Seventh Circuit has interpreted that statute as requiring the Government to prove only that a defendant's statements were "false; material; knowingly and willfully made; and concern[ing] a matter within the jurisdiction of a federal department or agency . . . ." *United States v. Turner*, 551 F.3d 657, 662 (7th Cir. 2008) (citing *United States v. Ringer*, 300 F.3d 788, 791 (7th Cir. 2002)). In that context, the Seventh Circuit emphasized that the materiality requirement was an objective one, calling for an analysis of "whether the misrepresentation . . . was predictably capable of affecting, *i.e.*, had a natural tendency to affect, the . . . decision." *Id.* (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988). Whether the defendant herself subjectively knew that the false statement she conveyed was material is not acknowledged as a requirement of that offense.

That understanding is also reflected in the Seventh Circuit pattern jury instruction for § 922(a)(6) which, as noted above, provides that:

> [i]n order for you to find . . . the defendant guilty of this charge, the government must prove [that]:
>
> 1. The defendant [made a false statement] . . . in connection with the [acquisition] . . . of [a firearm] . . . from a licensed firearms [dealer] . . . .; and
>
> 2. The defendant did so knowingly; and
>
> 3. The [statement] . . . was intended to or likely to deceive the [dealer] . . . with respect to any fact material to the lawfulness of the sale or other disposition of the [firearm] . . . .

Seventh Circuit Pattern Criminal Jury Instruction, Statutory Instructions, 18 U.S.C. § 922(a)(6). Pattern instructions of other circuits demonstrate the same—that the defendant's knowledge of the materiality of her false statement is not, and has not been, considered an element of the offense. *See, e.g.*, Fifth Circuit Pattern Criminal Jury Instruction 2.43(B) (2019); Eleventh Circuit Pattern Criminal Jury Instruction O34.3 (2022); Ninth Circuit Model Criminal Jury Instruction 14.8 (2020). Under these instructions, which align with the treatment of the statute by courts, the government need not prove, and the jury need not find, that the defendant knew that her false statement was material to the sale of the firearm.

Lastly, the Court will address Defendant's alternative argument that her false statement with respect to her drug use is objectively immaterial as a matter of law because § 922(g)(3), which prohibits "unlawful users" of controlled substances from possessing firearms, is unconstitutional under *Bruen*. ECF No. 27 at 9. Accordingly, her status as an "unlawful user" of marijuana, Defendant argues, cannot be material to the lawfulness of the sale. *Id.* ("That statement [that she was not an unlawful drug user] is only material to the lawfulness of the sale if being an unlawful user could disqualify her from purchasing or possessing a firearm."); ECF No. 34 at 10 ("If the government cannot lawfully prohibit [Defendant] from possessing, purchasing, or receiving a firearm based on her marijuana use, her statement regarding whether she was an 'unlawful user' would not be material because even a truthful answer could not have stopped her from purchasing a firearm.").

The Government asserts that this argument is foreclosed by *Holden*, 70 F.4th 1015.[4] Magistrate Judge Joseph agreed, and so does this Court. ECF No. 41 at 12.

In *Holden*, the defendant lied on an ATF Form 4473 regarding whether "he was then 'under indictment or information' for any crime punishable by imprisonment for a year or more." 70 F.4th at 1016. He entered a plea of guilty under § 922(a)(6) but later sought to withdraw his plea on the grounds that his false statement by definition could not have been "material" for purposes of § 922(a)(6) because, he alleged, the criminalization of purchasing or receiving a firearm while under indictment for a felony (codified at 18 U.S.C. § 922(n)) violated the Second Amendment. *Id.*

The Seventh Circuit rejected this argument, and so the Court will reject Defendant's analogous argument. "The main problem," the Seventh Circuit wrote, "is that [the defendant] was not charged with violating § 922(n)." *Id.* at 1017. "He was charged with making a false statement to a firearms dealer, in violation of § 922(a)(6)," and "Congress is entitled to require would-be purchasers to provide information—their names, addresses, Social Security numbers, criminal histories, and so on." *Id.* "The power to collect accurate information is of a different character—and stands on a firmer footing—than the power to prohibit particular people from owning guns," and "[m]any decisions of the Supreme Court hold that false statements may be punished even when the government is not entitled to

_____

[4]*Holden* had not been decided at the time that Defendant moved to dismiss the Indictment against her. It was decided a mere week after Defendant filed her motion to dismiss, and the Government accordingly relied on it in its opposition to Defendant's motion. ECF No. 30 at 6.

demand answers." *Id.* "People cannot engage in self help by telling lies to avoid the inquiry whether § 922(n)"—or here, § 922(g)(3)—"may properly apply to them; they must tell the truth and seek judicial relief on the ground that" the aforementioned provision "would be invalid with respect to them, in particular." *Id.* at 1018. "Indeed, one might think that the very act of lying to obtain a firearm implies a risk that the weapon will be misused." *Id.*

Defendant maintains that *Holden* was wrongfully decided. ECF No. 34 at 10. But she concedes that "th[e] Court is bound by Seventh Circuit precedent." *Id.* As in *Holden*, Defendant is not charged with the offense that she now claims is unconstitutional and which she consequently claims renders her § 922(a)(6) charges subject to dismissal. This is therefore "not the proceeding . . . in which to adjudicate a contention that" § 922(g)(3) "violates the Second Amendment," and since Defendant's argument relies on such an adjudication, it must fail. 70 F.4th at 1018; *see also United States v. Peavler*, No. 23-CR-081-JFH, 2023 U.S. Dist. LEXIS 160020, at *5 (E.D. Okla. Sept. 11, 2023) ("Defendant was not . . . permitted to lie on the ATF Form and then, if and when his lie was detected, attempt to circumvent criminal liability by subsequently challenging the constitutionality of § 922(d)(1)—a statute Defendant is not even charged under.") (citing *Holden*, 70 F.4th at 1018).

For all these reasons, the Court concludes that the Indictment in this case is not constitutionally deficient for its failure to allege that Defendant knew that her false statement was material to the transaction. Accordingly, the Court will adopt in part, *see supra* note 3, Magistrate Judge Joseph's report and recommendation regarding the sufficiency of the Indictment. Defendant's objections thereto are overruled, and her motion to dismiss Counts One through Three will be denied.

### 3.2  Compliance with Second Amendment

#### 3.2.1  Magistrate Judge Joseph's Report and Recommendation and the Parties' Arguments

Defendant also argues that Count Four, charging a violation of 18 U.S.C. § 922(d)(1) should be dismissed on the ground that it violates the Second Amendment under *Bruen*. ECF No. 27 at 12.[5] As noted, Count Four

---

[5]Defendant's motion to dismiss did not argue that § 922(a)(6) itself directly violates the Second Amendment under *Bruen*. Aside from challenging the sufficiency of the Indictment with respect to her § 922(a)(6) charges, Defendant asserted only that those charges should alternatively be dismissed on the ground that they "rely on a statute that violates the Second Amendment," namely, § 922(g)(3). ECF No. 27 at 9; *id.* ("[Defendant's] charges . . . under § 922(a)(6) can only stand if the *underlying prohibition* [(§ 922(g)(3))] . . . passes constitutional muster.") (emphasis added).

It was not until Defendant's reply that she expressed any intention to challenge § 922(a)(6)'s *own* direct compliance with the Second Amendment. ECF No. 34 at 10; *see also* ECF No. 44 at 12–14 (objection to Magistrate Judge Joseph's report and recommendation asserting that "*Holden* . . . does not foreclose [Defendant's] argument that § 922(a)(6) *itself* burdens her Second Amendment rights directly"). Any argument that her § 922(g)(3) charges directly violate the Second Amendment could be deemed forfeited by virtue of Defendant's failure to include them in her principal brief in support. *Williams v. Wis. Dep't of Workforce Dev.*, 731 F. App'x 537, 538–39 (7th Cir. 2018) (citing *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 768 (7th Cir. 2018)).

Defendant asserts that she did not raise the issue of § 922(a)(6)'s own constitutionality until her reply because she was (1) "offer[ing] a response to the [G]overnment's position," ostensibly in its brief in opposition, although Defendant offers no citation, and (2) responding to the Seventh Circuit's intervening decision in *Holden*. ECF No. 34 at 11 n.4. The Court is not convinced. The Government's brief in opposition to Defendant's motion to dismiss does not offer a position on the direct constitutionality of § 922(a)(6) under *Bruen*, presumably because Defendant did not herself raise the issue. *See generally* ECF No. 30. And *Holden* did not discuss the constitutionality of § 922(a)(6)—the defendant there challenged the constitutionality of § 922(n). 70 F.4th at 1016–17 ("[The defendant] does not contend, and the district court did not find, that there is any constitutional problem with § 922(a)(6)."). It is therefore entirely unclear how either the Government's response or *Holden* justify Defendant's challenging the constitutionality of § 922(a)(6) itself for the first time in her reply.

charges Defendant with transferring firearms to her co-defendant, Houston, whom she knew or had reasonable cause to believe had been convicted of a felony. ECF No. 1 at 4.

Defendant argues that § 922(d)(1) is unconstitutional—both facially and as applied to her—because it burdens both the transferor's (here, Defendant's) and the felon transferee's (here, Houston's) Second Amendment rights and because there are no "distinctly similar" historical analogues to the statute. ECF No. 27 at 13, 17.

In response, the Government argues that this challenge fails because "[t]he plain text of [the] Second Amendment does not cover a violation of [§] 922(d)(1), and even if it did, felon disarmament is consistent with the Nation's historical tradition of firearm regulation." ECF No. 30 at 8 ("[D]efendant is not charged with a violation that prohibits her from 'keeping and bearing' arms . . . . She is instead charged with unlawfully *transferring* a firearm to a felon, which is not covered by the 'plain text' of the Second Amendment.") (citing *United States v. Davis*, No. 22-CR-189, ECF No. 31 (E.D. Wis. Feb. 27, 2023) (hereinafter, "*Davis*"); *Teixeira v. County of Alameda*, 873 F.3d 670, 686–87 (9th Cir. 2017); and *United States v. Bacon*, 884 F.3d 605, 622 (6th Cir. 2018)).

Magistrate Judge Joseph agreed with the Government. First, she agreed that it was not at all clear that the conduct prohibited by § 922(d)(1) fell within the Second Amendment's plain language. ECF No. 41 at 14–15 (collecting cases). "Given that the plain language of the Second

---

Accordingly, the Court will not address Defendant's contention in reply and in her objections to the report and recommendation that her "false statement charges under § 922(a)(6) violate her Second Amendment right to bear arms." ECF No. 44 at 11.

Amendment addresses the right to 'keep and bear arms' rather than transfer arms," Magistrate Judge Joseph wrote, "[Defendant] attempts to bootstrap her Second Amendment claim to the rights of the firearm possessors," or transferees, on the ground that "every defendant has a personal right to not be convicted under a constitutionally invalid law." *Id.* at 15 (quoting ECF No. 27 at 16) (internal quotation marks omitted). "[A]llowing one party to assert the rights of another is the exception, not the rule," and Magistrate Judge Joseph was "not convinced that Houston's status as [Defendant's] romantic partner of 12 years, with whom she resides, is sufficient" to enable Defendant to assert the Second Amendment right on Houston's behalf. *Id.* at 17 (citing *Eisenstadt v. Baird*, 405 U.S. 438, 445 (1972)). And because Magistrate Judge Joseph concluded that "§ 922(d)(1) does not fall under the Second Amendment's plain text," she "need[ed] not assess § 922(d)(1) under *Bruen*'s second step."

In objection, Defendant argues that the Government "has failed to meet its historical burden at [*Bruen*'s] second step" and that Magistrate Judge Joseph's conclusion that the conduct that § 922(d)(1) prohibits does not fall within the Second Amendment's plain language "takes too narrow a view of the Second Amendment and its reach." ECF No. 44 at 15.

### 3.2.2   Law and Analysis

Section 922(d)(1) provides that

> it shall be unlawful for any person to sell or otherwise dispose of any firearm . . . to any person knowing or having reasonable cause to believe that such person . . . is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . .

Meanwhile, the Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. AMEND. II.

*Bruen* provides that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. at 2129–30. The Supreme Court in *District of Columbia v. Heller* defined the phrase "to keep and bear Arms" as "[t]o retain; not to lose," "[t]o have in custody," and "[t]o hold; to retain in one's power or possession." 554 U.S. 570, 582 (2008).

The Court has located only a handful of cases addressing the precise question here at issue after *Bruen*: whether the conduct prohibited by § 922(d) (selling or otherwise disposing of a firearm to various classes of prohibited persons) falls within the plain text of the Second Amendment. Only one of those cases that the Court has been able to locate concludes that the conduct prohibited by § 922(d)(1) falls within the plain language of the Second Amendment. *United States v. Connelly,* No. 22-CR-229(2)-KC, 2023 U.S. Dist. LEXIS 62495, at *12 (W.D. Tex. Apr. 6, 2023). The remainder of these cases—including two in-circuit—have concluded the opposite; that the conduct prohibited by § 922(d) does not fall within the plain language of the Second Amendment and is therefore not presumptively protected. *United States v. Porter,* No. 3:22-00055, 2023 U.S. Dist. LEXIS 1818, at *5 (Jan. 5, 2023) (S.D. W. Va. Jan. 5, 2023); *United States v. Sims,* No. 22-cr-30081, 2023 U.S. Dist. LEXIS 184439, *5 (C.D. Ill. Oct. 13, 2023); *Davis*, ECF No. 31.

In *Connelly*, the court addressed the defendant's motion to dismiss the indictment against her on the ground that § 922(d)(3)[6] violated the Second Amendment. 2023 U.S. Dist. LEXIS 62495, at *3. The court acknowledged that the Second Amendment "makes no mention of a right to 'sell or otherwise dispose of' firearms." *Id.* at *32. Nevertheless, the court "f[ound] that § 922(d)(3) burdens conduct protected by the Second Amendment" because restrictions on the sale or disposition of firearms nevertheless may "significantly burden the ability of individuals to acquire firearms." *Id.* at *34 (citing *Teixeira*, 873 F.3d at 677). In other words, *Connelly*, to use the words of Magistrate Judge Joseph, "bootstrap[s]" the Second Amendment claim of the transferor to that of the transferee.

To the extent that Defendant attempts to do the same—to argue that § 922(d)(1) is unconstitutional because it burdens the felon transferee's Second Amendment rights, ECF No. 27 at 17, the Court will reject that argument. While there is "no binding precedent in this circuit on whether the Second Amendment's plain text covers the possession [or acquisition] of firearms by felons," *United States v. Jackson,* No. 20-CR-298, 2023 U.S. Dist. LEXIS 195005, at *13 (N.D. Ill. Oct. 31, 2023), Defendant's argument can nevertheless be rejected at *Bruen*'s second step, which provides that in order to justify the regulation, the Government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. Numerous courts in this circuit and in this district have already found that the Government met that burden in

----

[6]Section 922(d)(3) provides that it is "unlawful for any person to sell or otherwise dispose of any firearm . . . to any person knowing or having reasonable cause to believe that such person . . . is an unlawful user of or addicted to any controlled substance . . . ." 18 U.S.C. § 922(d)(3).

similar cases. *See, e.g., Jackson,* 2023 U.S. Dist. LEXIS 195005 at *17 ("While the issue is certainly debatable, I am persuaded that when the Seventh Circuit reaches the question . . . it will likely hold that firearm possession by felons is not categorically excluded from the textual scope of the Second Amendment. But this conclusion does not avail [the defendant] because the government's historical evidence amply establishes Congress's authority to prohibit felons like him from possessing firearms."); *United States v. Denruyter,* No. 23-CR-155, 2023 U.S. Dist. LEXIS 209398, at *19–20 (E.D. Wis. Oct. 17, 2023), *report and recommendation adopted,* No. 23-CR-155, 2023 WL 8081658 (E.D. Wis. Nov. 21, 2023) ("[E]arly laws restricting categories of persons considered either untrustworthy or dangerous demonstrates that 'Congress acted within the historical tradition when it enacted . . . the prohibition on possession of firearms by felons.'") (quoting *United States v. Jackson,* 69 F.4th 495, 505–06 (8th Cir. 2023)); *Range v. Att'y Gen. U.S.,* 69 F.4th 96, 119–20 (3d Cir. 2023) (en banc) (same). Indeed, this Court has already concluded the same. *See United States v. Maurice Geonta Davis,* No. 22-CR-210-JPS, 2024 U.S. Dist. LEXIS 22134, at *39 (E.D. Wis. Feb. 8, 2024).

Having rejected that portion of Defendant's argument, the Court returns to its discussion of the remaining cases addressing whether the sale or disposition of a firearm to a prohibited person falls within the plain text of the Second Amendment such that it is presumptively protected. In *Porter,* the court concluded that the defendant's § 922(d)(1) charge "survive[d] the *Bruen* inquiry" because "Defendant has not been charged with any conduct that falls under the plain text of the Second Amendment." 2023 U.S. Dist. LEXIS 1818, at *1–2, 6. "Defendant conflates the right to possess a firearm with the right to sell and transfer it . . . ." *Id.* at *7. Regarding its primary reliance on a pre-*Bruen* case, the court maintained that the differing

"threshold inquiries" nevertheless "yield[ed] the same result." *Id.* at *8 ("In the process of finding that a regulation on transferring firearms did not burden the defendant's Second Amendment rights, the Fourth Circuit in [*United States v.*] *Chafin*[, 423 F. App'x 342, 344 (4th Cir. 2011)] made clear the conduct did not fall within the Second Amendment's plain text. There is no reason to think this finding has changed.").

Similarly, in *Sims*, the court rejected the defendant's facial and as-applied Second Amendment challenge to his § 922(d)(1) charge. "[T]he Court's analysis begins and ends with the question of [the defendant's] conduct." 2023 U.S. Dist. LEXIS 184439, at *5. Defendant's "alleged course of conduct"—the transfer of a firearm to a prohibited person—does not "find[] shelter in the plain text of the Second Amendment" because "giving away a gun definitionally excludes 'keeping' or 'bearing' it," the court concluded. *Id*. "[T]he most natural reading of 'keep Arms' in the Second Amendment is to 'have weapons.'" *Id.* (quoting *Heller*, 554 U.S. at 582). Similarly, to "bear Arms" "refers to carrying [a firearm] for a particular purpose—confrontation." *Id.* at *5–6 (quoting *Heller*, 554 U.S. at 584). "Applying these definitions here," the court concluded, "leads inexorably to one result: a gun cannot be 'kept' or 'borne' by one person if it is in some manner surrendered to another." *Id.* at *6. "[The defendant's] conduct," therefore, "is not entitled to the Second Amendment's presumptive protection." *Id*.

Lastly, in *Davis*, Magistrate Judge Stephen C. Dries recommended the rejection of a post-*Bruen* Second Amendment challenge to § 922(d)(1),

Case 2:23-cr-00035-JPS   Filed 02/22/24   Page 25 of 29   Document 49

concluding that "[t]he plain text of the Second Amendment does not enshrine a right to transfer a firearm." *Davis*, ECF No. 31 at 6.[7]

Magistrate Judge Joseph's reasoning and conclusion align with those of *Sims*, *Porter*, and *Davis*. Defendant objects to this reasoning and conclusion on the ground that "[a] person can 'dispose of' a firearm within the meaning of [§ 922(d)(1)] without fully relinquishing ownership—or even full control—of the firearm" such that the person could still be keeping or bearing arms. ECF No. 44 at 16 (citing *United States v. Stegmeier*, 701 F.3d 574, 579–80 (8th Cir. 2012)); ECF No. 27 at 15 ("Under the broad reach of § 922(d)(1), for example, a woman who lawfully purchases a firearm to protect herself and her children in her own home may risk criminal prosecution by the federal government if she keeps that firearm in the nightstand she shares with her husband, who happens to be a felon.").[8]

But it is not entirely clear that this hypothetical scenario in which an individual disposes of a firearm to a felon "without fully relinquishing ownership or control of it" is what occurred, or is alleged to have occurred,

---

[7]Magistrate Judge Dries's report and recommendation was neither adopted nor rejected by the district court because it was mooted by the defendant's guilty plea. *Davis*, ECF No. 35.

[8]It is apparent that Defendant fails to demonstrate facial unconstitutionality, which requires a showing that "no set of circumstances exists under which the law would be valid . . . ." *United States v. Tollefson*, 367 F. Supp. 3d 865, 872 (E.D. Wis. 2019) (citing *United States v. Stevens*, 559 U.S. 460, 472 (2010)). Facial invalidation of legislation is "disfavored," and parties seeking to raise such challenges face a "heavy burden." *United States v. Bonin*, 932 F.3d 523, 534 (7th Cir. 2019) (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) and quoting *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998)). Defendant has not met that heavy burden. She argues that *some* ways of violating § 922(d)(1) are unconstitutional, but that is not to say that *all* manners of violating § 922(d)(1) are unconstitutional, which is what facial invalidation of a statute requires.

here, and an as-applied challenge by definition "charges [that] an act is unconstitutional as applied to a [defendant's] *specific* activities." *Surita v. Hyde*, 665 F.3d 860, 875 (7th Cir. 2011) (citing *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 803 & n.22 (1984)) (emphasis added); *see also Kissinger v. Fort Wayne Cmty. Sch.*, 293 F. Supp. 3d 796, 803 (N.D. Ind. 2018) ("When confronted with an as-applied challenge, the Court must examine the facts of the case before it exclusively, and not any set of hypothetical facts under which the statute might be unconstitutional.") (citing *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012)).

This is not a case in which the Government seeks to prosecute an individual for, for example, merely maintaining a firearm in her nightstand in the room she shares with her partner, who happens to be a convicted felon. Defendant is not charged with merely keeping a firearm in the home that she shared with Houston. To the contrary, Defendant was recorded on surveillance video purchasing a firearm while accompanied by convicted felon Houston, and her Facebook page later displayed photos of Houston wielding the firearm. ECF No. 30 at 2–3. And "[w]hen officers asked when [Defendant] gave [] Houston access to those firearms, she said on the day [she] purchased them, . . . when they got home." ECF No. 34 at 13; ECF No. 30 at 3–4 ("[Defendant] admitted that . . . she gave both the blue Glock and black Glock to Houston when they got back from Fleet Farm . . . ."). The Government also alleges that "[w]hen asked why Houston did not purchase his own firearms, [Defendant] said officers already knew why— Houston was a felon . . . ." ECF No. 30 at 4. When officers arrived to perform a search, Defendant stated that she did not know where the firearms were. *Id.* at 3. These facts do not align with Defendant's suggestion that she could

have transferred the firearms to Houston "without fully relinquishing ownership—or even full control—of [them]." ECF No. 44 at 16.

Bearing in mind that, in the context of an as-applied constitutional challenge, the Court is constrained to consider only the specific facts of the instant case rather than hypotheticals, the Court concludes that the specific conduct alleged for which Defendant is now charged with violating § 922(d)(1) does not fall within the plain text of the Second Amendment such that it would be presumptively protected. As in *Porter*, the Court must conclude that "Defendant has not been charged with any conduct that falls under the plain text of the Second Amendment." 2023 U.S. Dist. LEXIS 1818, at *6. She is charged with purchasing and then promptly handing over a firearm to Houston, whom she knew to be a felon. Nothing in the limited factual record now before the Court, including Defendant's own vague contentions, supports her assertion that she is being charged for conduct falling within the plain scope of "keep[ing] and bear[ing] Arms." *See Heller*, 554 U.S. at 582.

For all these reasons, the Court overrules Defendant's objections to Judge Joseph's recommendation that Defendant's challenge to Count Four be denied and will deny Defendant's motion to dismiss Count Four.

### 4.    CONCLUSION

For the reasons discussed herein, the Court concludes that the Indictment in this case sufficiently "'track[s]' the words of the statute itself" and "set[s] forth all the elements necessary to constitute the offense intended to be punished" such that it complies with minimum constitutional requirements. *Smith*, 230 F.3d at 305 (quoting *Hinkle*, 637 F.2d at 1157).

Additionally, the Court concludes that the conduct in which Defendant is alleged to have engaged in violation of § 922(d)(1) does not fall within the plain text of the Second Amendment and is not, therefore, presumptively protected under *Bruen*.

For these reasons, the Court overrules Defendant's objections to Magistrate Judge Joseph's report and recommendation, adopts in part (*see supra* note 3) Magistrate Judge Joseph's report and recommendation, and denies Defendant's motion to dismiss.

Accordingly,

**IT IS ORDERED** that Defendant Crystal L. Washington's objections, ECF No. 44, to Magistrate Judge Joseph's report and recommendation, ECF No. 41, be and the same are hereby **OVERRULED**;

**IT IS FURTHER ORDERED** that Magistrate Judge Joseph's report and recommendation, ECF No. 41, on Defendant Crystal L. Washington's motion to dismiss, ECF No. 27, be and the same is hereby **ADOPTED** as detailed in the foregoing analysis, *see supra* note 3; and

**IT IS FURTHER ORDERED** that Defendant Crystal L. Washington's motion to dismiss, ECF No. 27, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 22nd day of February, 2024.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge